# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00351-CV

**T. J., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT
### NO. C2013-0254D, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant T.J. ("Teresa") appeals from the trial court's order terminating her parental rights to her three minor children: "David," "Kelly," and "Zoe."[1] On appeal, Teresa asserts that the evidence is insufficient to (1) establish that a statutory ground for terminating her parental rights exists, (2) establish that termination of her parental rights is in her children's best interests, and (3) overcome the presumption that a parent should be named managing conservator of her children. We affirm the trial court's judgment terminating Teresa's parental rights.

## BACKGROUND

Appellee Texas Department of Family and Protective Services (the Department) became involved in this case when it learned that Teresa had been hospitalized after attempting to

---

[1] For the sake of convenience and privacy of the parties, we refer to T.J., her children, and the children's family members by fictitious names. *See* Tex. Fam. Code § 109.002(d).

commit suicide. Jerusha Jennings, the Department's lead investigator in this case, would later testify that while Teresa was hospitalized, she went to Teresa's home and spoke with "Brad," Teresa's boyfriend and the father of her children. According to Jennings, Brad confirmed that Teresa attempted to commit suicide by overdosing on ibuprofen, and Brad expressed concern that "she was back on drugs." Jennings also learned that when Teresa attempted to commit suicide, she was alone in her home with Zoe, who was two years old at the time.

Based on this initial investigation, the Department, Teresa, and Brad entered into a "safety plan" under which Teresa could continue to live in the home and be around the children, but Brad agreed not to leave the children alone with Teresa. A few days after the parties agreed to the safety plan, however, Jennings returned to the couple's home where she found Brad alone and the electricity service disconnected. Brad admitted that he allowed Teresa to leave the house with Zoe in violation of the safety plan. Given the parents' inability to follow the in-home safety plan, the Department and the parents agreed to a "parent-child safety placement," under which all three children were placed outside of Brad and Teresa's home. As part of this voluntary plan, Teresa and Brad submitted to drug tests. Brad tested negative for drugs, but Teresa tested positive.

Following these drug tests, the Department conducted a "family team meeting" at which time it informed Brad that the Department would be seeking to remove the children from Brad and Teresa's custody. Teresa was not at this meeting, but she spoke with Jennings the next day and expressed a willingness to voluntarily enter an inpatient treatment facility to address her drug addiction. However, when Teresa was en route to a treatment facility, she attempted to commit suicide again and was taken by force to a state hospital.

2

After this second suicide attempt, the Department sought to remove David, Kelly, and Zoe from Brad and Teresa's care. Following an adversarial hearing, the trial court entered an order naming the Department as the children's temporary managing conservator. Vickie Denman, a caseworker for the Department who assumed responsibility for this case in July 2013, testified that after the children's removal, the Department prepared family service plans through which Brad and Teresa could work toward regaining custody of their children. *See* Tex. Fam. Code § 263.106. Among other things, the service plan required Teresa to complete an inpatient drug treatment program, submit to a hair follicle drug test, attend Narcotics Anonymous and Alcoholics Anonymous sessions, and complete individual counseling. According to Denman, Brad completed all of the requirements of his family service plan, but Teresa only completed an initial psychological evaluation and attended three counseling sessions.

Based on Teresa's lack of progress in her family service plan, the Department ultimately sought to terminate Teresa's parental rights and have the children continue to live with Brad. Following a two-day final hearing on the Department's petition to terminate Teresa's parental rights, the trial court found by clear and convincing evidence that Teresa had failed to comply with the terms of her family service plan and that termination of her parental rights was in her children's best interest. *See id.* § 161.001(1)(O), (2). Therefore, the trial court entered a final judgment terminating Teresa's parental rights to her three children. This appeal followed.

**DISCUSSION**

On appeal, Teresa asserts that the evidence is legally and factually insufficient to support the trial court's judgment. To terminate the parent-child relationship, the fact-finder must

3

find clear and convincing evidence that (1) the parent has engaged in conduct constituting statutory grounds for termination and (2) termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). In her first appellate issue, Teresa argues that there is insufficient evidence to prove that a statutory ground for termination exists because there is no evidence that Teresa was ordered to complete a family service plan based on allegations that she abused or neglected her children. *See* Tex. Fam. Code § 161.001(1)(O). Second, Teresa claims that there is insufficient evidence to prove that terminating her parental rights is in her children's best interests. *See id.* § 161.001(2). Finally, Teresa asserts that the evidence is insufficient to overcome the presumption that as a parent, she should remain the managing conservator of her children.

**Standard of review**

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a termination case, we review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the trial court's determination and will uphold a finding if a reasonable fact-finder could have formed a firm conviction that its finding was true. *Id.* To give appropriate deference to the trial court's conclusions, we must assume that the court resolved disputed facts in favor of its finding if it could reasonably do so. *Id.* An appellate court should disregard evidence a reasonable fact-finder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder

4

could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d at 18–19. We assume that the trial court resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the fact-finder could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

**Statutory ground for termination**

In her first appellate issue, Teresa asserts that the evidence is legally and factually insufficient to support the trial court's conclusion that a statutory ground for terminating her parental rights exists. Specifically, Teresa argues that there is no evidence that the family service plan she was ordered to complete was in response to her children's removal for abuse or neglect. Therefore, according to Teresa, her failure to complete the family service plan does not satisfy the elements of section 161.001(1)(O) of the Texas Family Code.

The Department's only statutory ground for terminating Teresa's parental rights was subsection (O), which provides that a parent-child relationship may be terminated if the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal *from the parent under Chapter 262 for the abuse or neglect of the child*.

5

Tex. Fam. Code § 161.001(O) (emphasis added). The supreme court has recognized that it is an essential element of subsection (O) that the child was removed under Chapter 262 for abuse or neglect. *See In re E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013) (discussing broad meaning of abuse and neglect under Chapter 262). However, the court held that within the meaning of Chapter 262, abuse or neglect encompasses both actual abuse or neglect and a substantial risk of abuse or neglect. *See id.* at 246–47; *L.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, at *7 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (noting that whether removal was result of abuse or neglect is determined on case-by-case basis). Thus, under subsection (O), the Department had the burden to establish that Teresa (1) was ordered to comply with a family service plan as a result of her children's removal for abuse or neglect and (2) failed to comply with the requirements of the family service plan.

The trial court took judicial notice of testimony that it heard in previous hearings and the dates of its previous orders in this case, but did not take judicial notice of the content of those orders—specifically, its order removing Teresa's children and naming the Department the children's temporary managing conservator. Furthermore, the Department did not offer a copy of the trial court's order or Teresa's family service plan as an exhibit. Teresa asserts that because neither the order removing her children nor her family service plan was admitted into evidence, the record is insufficient to establish any of the facts necessary to terminate her parental rights under subsection (O).

Although the order of removal and the family service plan were not admitted as exhibits, both Jennings and Denman testified extensively about the reasons that Teresa's children

6

were removed and Teresa's failure to complete her family service plan. Jennings testified that the Department sought to remove the children and be named the children's temporary managing conservator based on Teresa's two suicide attempts, one of which occurred while she was alone with two-year-old Zoe; Teresa's admission to a history of drug abuse; and her testing positive for drugs while she was under the parent-child safety placement. Jennings stated that Teresa's and Brad's actions while the children were in their care endangered the children's physical health and safety. Finally, Jennings testified that after an adversarial hearing, the trial court ordered the children removed from Teresa and Brad's care and ordered that the Department be named temporary managing conservator.

Similarly, Denman testified about Teresa's failure to comply with the family service plan. According to Denman, the family service plan required Teresa to complete an inpatient drug treatment program, submit to a hair follicle drug test, attend Narcotics Anonymous and Alcoholics Anonymous sessions, and complete individual counseling. Furthermore, Denman confirmed that this family service plan was submitted to the trial court and that the court ordered Teresa to complete the plan in May 2013. Finally, Denman testified that Teresa completed her psychological evaluation but had not completed any of the other requirements of her family service plan. Teresa did not introduce any evidence or testimony to contradict Jennings's and Denman's statements.

Based on Jennings's and Denman's statements, the trial court could have reasonably concluded that Teresa was ordered to comply with a family service plan as a result of her children's removal for abuse and neglect. Furthermore, based on Denman's testimony, the trial court could have reasonably concluded that Teresa failed to comply with the requirements of that family service

7

plan. Therefore, considering the evidence in the light most favorable to the trial court's ruling, we conclude that the court could have formed a firm belief or conviction that subsection (O) is a statutory ground that supports terminating Teresa's parental rights. *See* Tex. Fam. Code § 161.001(1)(O); *see also In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (noting that only one statutory ground for termination is necessary to support termination of parental rights). Thus, the evidence is legally sufficient to support the trial court's judgment. Similarly, considering the evidence in a neutral light, we conclude that the trial court could have resolved the disputed evidence in favor of its finding. *See A.V.*, 113 S.W.3d at 362. Therefore, the evidence is factually sufficient to support the trial court's finding that a statutory ground for termination exists. We overrule Teresa's first appellate issue.

**Best interest finding**

In her second issue on appeal, Teresa asserts that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in her children's best interests. Specifically, Teresa notes that the Department did not terminate Brad's parental rights, and that Brad testified that he hoped Teresa would have an ongoing relationship with her children. Therefore, according to Teresa, the trial court's order terminating her parental rights "does nothing to further the plans for the children and makes no sense."

In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). These factors include (1) the child's wishes, (2) his emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the

8

parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the fact-finder from finding that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d at 267 n.39; *see also Rios v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00565-CV, 2012 WL 2989237, at *8 (Tex. App.—Austin July 11, 2012, no pet.) (mem. op.).

In this case, Brad testified that his children loved and missed Teresa and that he hoped Teresa would still be a part of their children's lives. However, Brad admitted that Teresa had made suicide attempts in the past and had a recurring history of drug abuse. Furthermore, Brad conceded that during the pendency of this case, Teresa missed several scheduled visits with her children, which Brad admitted had disappointed his children.

In addition, Susan Sprole, the court appointed special advocate who represented the children in this case, testified that Teresa lacked appropriate parenting skills, had failed to show any change in behavior during the pendency of this case, and had made no effort to be reunited with her children. Sprole also stated that Teresa did not have a legitimate excuse for not completing the requirements of her service plan. Finally, Sprole testified that regardless of whether Brad allowed Teresa to visit the children, terminating Teresa's parental rights was in the children's best interest.

9

Considering this record in the light most favorable to the trial court's judgment, we conclude that a reasonable fact-finder could have found clear and convincing evidence that termination of Teresa's parental rights was in her children's best interests. Therefore, the evidence is legally sufficient to support the trial court's best-interest finding. *See J.F.C.*, 96 S.W.3d at 266. Similarly, considering the evidence in a neutral light, we conclude that the disputed evidence is not so significant as to prevent a reasonable fact-finder from forming a firm belief or conviction that the court's best-interest finding was true. Thus, the evidence is factually sufficient to support the trial court's best-interest finding. *See id.* We overrule Teresa's second appellate issue.

**Presumption on managing conservatorship**

In her final issue on appeal, Teresa asserts that the evidence is legally and factually insufficient to overcome the presumption that it is in the children's best interest to have both parents named joint managing conservators. Specifically, Teresa argues that section 153.131(b) of the Family Code codifies this strong rebuttable presumption, and that the presumption is only removed if there is a "finding of a history of family violence involving the parents." *See* Tex. Fam. Code § 153.131(b). According to Teresa, there is no evidence that she has a history of family violence, and thus the presumption that she and Brad should be named the children's joint managing conservators still exists. Furthermore, Teresa asserts that the evidence is insufficient to overcome this presumption and, therefore, the trial court should have made Teresa the joint managing conservator of her children.

The sections of the Family Code upon which Teresa relies are not applicable in this case. As we recently explained, the statutes cited by Teresa create a statutory preference for placement

10

with a parent while a parent still retains her parental rights.  *See Spurck v. Texas Dep't of Family &*
*Protective Servs.*, 396 S.W.3d 205, 219–20 (Tex. App.—Austin 2013, no pet.) (citing Tex. Fam.
Code §§ 262.114(c)(1), 263.306(a)(6), 263.404(a)(2); *In re D.O.*, 338 S.W.3d 29, 38–39 (Tex.
App.—Eastland 2011, no pet.)).  Following the termination of her parental rights, Teresa does not,
and logically should not, enjoy a presumption that it is in her children's best interest to have a parent
who has had her parental rights terminated named the children's managing conservator.  *See id.*;
*see also* Tex. Fam. Code § 101.024(a) (noting that for purposes of Family Code, "the term [parent]
does not include a parent as to whom the parent-child relationship has been terminated").

Thus, Teresa's assertion that the Department was required to overcome a presumption
that she is the preferred joint managing conservator of her children is without merit.  *See Spurck*,
396 S.W.3d at 220.  We overrule Teresa's third appellate issue.

## CONCLUSION

Having overruled Teresa's three issues on appeal, we affirm the trial court's judgment
terminating her parental rights.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   November 25, 2014

11