# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00678-CV

### E. H., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. 12-15167, HONORABLE BENTON ESKEW, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found by clear and convincing evidence that the parent-child relationship between E.H. and his five children should be terminated. On appeal, E.H. challenges the legal and factual sufficiency of the evidence supporting the jury's finding that termination is in the children's best interests. We will affirm the judgment.

## BACKGROUND

This appeal concerns E.H.'s parental rights to five children—girls born in December 1999 and August 2002, and boys born in March 2004, October 2005, and June 2007. The children were removed from the parents in April 2012 after one of the boys told school officials that their youngest brother had been eaten by wolves. The report proved false, but apparently triggered a chain of events that led the children's mother to disappear with the children for several days. During that time, they missed school and their personal hygiene was substandard. The Department's

investigation revealed reports of domestic violence and drug abuse by the parents. The children were placed with a relative so that the parents could focus on resolving their problems, which included financial and emotional stresses from losing their home and belongings in a forest fire. The parents complied with some aspects of the service plan, but repeatedly tested positive for drug use, which curtailed their visitation with the children.

There was uncontroverted testimony that the children were anxious, emotional, and verbally and physically abusive when they were taken into foster care. Their first placement requested that they be reassigned because they were hurting her physically. The boys tended to refer to women and girls with derogatory language. After three placements in five months, the children settled in with their fourth foster placement for the year prior to the trial. Four of the children reportedly thrived in this home, but the younger girl was removed to a residential treatment center for her emotional issues. The undisputed reports are that the children now are less anxious, less verbally and physically abusive, and doing much better in school.

The trial court extended the year-long period for compliance with the service plan by the maximum six months. Not long before trial, the children's mother disappeared.[1] E.H. found an intensive outpatient drug rehabilitation program that seemed to be helping him in the final weeks before trial, but he had relapsed three times after beginning treatment there including twenty-four days before his testimony at trial.

---

[1] The relative who originally took the children indicated that several weeks before trial, E.H. sent a text stating that the mother was missing. The licensed counselor who taught both parents protective parenting and then provided some individual counseling testified that the mother had entered a residential treatment program six weeks before trial, but then ten days before trial dropped out of or had been asked to leave the program. She did not appear in person at trial although her counsel did.

A jury found that both parents had committed several of the actions justifying termination[2] and that termination was in the children's best interests, and the trial court terminated the parental rights of both parents to these children. *See* Tex. Fam. Code § 161.001. The children's mother does not appeal the termination of her rights.

## STANDARD OF REVIEW

The best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). These factors include (1) the child's wishes, (2) his emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). There is a strong presumption that a parent should be appointed managing conservator unless that appointment is not in the child's best interest and would significantly impair the child's physical health or emotional development. *See*

---

[2] These actions include voluntarily leaving the child in another's possession without providing adequate support for at least six months, knowingly placing or allowing the child to remain in conditions or surroundings or with persons who endangered the child's emotional or physical well-being, failing to support the child in accordance with their ability for a year ending within six months of the date of the filing of the petition, being the major cause of the child's failure to be enrolled in school as required, constructively abandoning the child in the custody of the Department despite attempts at reunification, not visiting or maintaining significant contact with the child, demonstrating an inability to provide the child with a safe environment, not complying with the service plan for reunification, using a controlled substance in a manner that endangered the health or safety of the child, and failing to complete a court-ordered substance-abuse treatment program.

3

*Lewelling v. Lewelling*, 796 S.W.2d 164, 166-67 (Tex. 1990); *Harris v. Texas Dep't of Family & Protective Servs.*, 228 S.W.3d 819, 821 (Tex. App.—Austin 2007, no pet.); *see also* Tex. Fam. Code § 153.131(a).

The Department need not prove all nine of these factors favor termination. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the children's best interests. *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 222 (Tex. App.—Austin 2013, no pet.).

We review the legal sufficiency of the evidence in a termination case by considering all of the evidence in the light most favorable to the factfinder's determination and will uphold a finding if a reasonable factfinder could have formed a firm conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the jury resolved disputed facts in favor of its finding if it could reasonably do so. *Id.* An appellate court should disregard evidence a reasonable factfinder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable factfinder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d at 18-19. We assume that the jury resolved disputed facts in favor of its finding if a reasonable jury could do so, and we disregard evidence that a reasonable jury could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable factfinder could not reasonably have formed a firm belief or conviction supporting its finding. *Id.*

4

**DISCUSSION**

By his sole issue on appeal, E.H. contends that the evidence was legally and factually insufficient to support a finding that termination of his parental rights was in the children's best interests. E.H. contends that the Department failed to produce sufficient evidence to support findings on the *Holley* factors set out above. *See* 544 S.W.2d at 371-72.

The children did not testify, so all evidence of their wishes was second-hand. E.H. cites the children's therapist's testimony that the children wanted to go home and be with their parents. He also points to undisputed testimony that he and the children love each other. E.H.'s argument fails to mention other parts of the therapist's testimony, however, in which she reported that the children said they wanted to go home only because there are "awesome things" like a pony, guns, and a dog waiting for them, but if the things are not there they prefer to stay in their current foster placement. The therapist testified that, when the parents had failed to deliver on promises of items to be provided in visits, the children reverted to anxiety, anger, and depression. The therapist said that the children want to stay where they are until their parents "do whatever they have to do."

E.H. concedes that he could not at the time of trial satisfy the children's physical and emotional needs because the home he was building for them was not yet complete and because he was working and undergoing an intensive outpatient drug rehabilitation program. E.H. testified that, before trial, he was unaware that the volatility of his relationship with the children's mother, including verbal hostility and occasional physical confrontations, had the negative effects on the children that their therapists recounted. He testified that he was unaware that his children's yelling, cursing, and fighting were not standard for children their age. E.H. admitted to drug use spanning decades—primarily daily marijuana use, but also some methamphetamine use. Only

5

after his children had been removed from his care for fifteen months—three months after the original deadline for completion of his service plan—did he begin participating in drug rehabilitation. In the remaining three months of the extended compliance period, he relapsed three times including 24 days before trial. Despite the fact that positive drug tests prevented him from visiting his children, he repeatedly tested positive for drug use during the pendency of the case and testified that he probably would have on the date of trial, given the recency of his last relapse. He recounted twenty-eight arrests in his lifetime, including nine for marijuana possession, and had been incarcerated. Persons involved in and observing E.H. during his participation in the rehabilitation program testified that they had seen a remarkable change in the weeks prior to the trial and believed that he could have a solid foundation for his future within six months to a year.

E.H.'s stated plan is to move the children into a house on his father's property. Testimony from therapists revealed that both girls alleged that they were sexually abused by E.H.'s father. E.H. did not think his father would sexually abuse a child, but said he would believe a daughter who claimed it occurred. E.H. testified that he was aware that his father communicated primarily by yelling angrily, but did not realize that his children feared his father. The therapist testified that the children said that they do not want to go back to their parents if that means being near their paternal grandfather. The children told their therapist that their grandfather spanked them with fan blades and belts. E.H. nevertheless persisted in his intention to house the children on his father's property.

The CASA volunteer testified that, while her original goal was to reunite the children with their parents, she had determined that termination was appropriate. She had been assigned to the case for almost nine months. She testified that CASA volunteers visit with the children monthly,

6

and she described her conversations with and observations of the children. She had read documents filed in the case including E.H.'s psychological evaluation, had read the children's therapist's notes, and had discussed the children with the therapist. She testified that the children were thriving in their foster placement at the time of trial. She described their current placement as stable despite their repeated moves early in the case. The CASA volunteer testified that the children would need to continue in therapy and that she did not see how E.H. could provide that. She conceded that E.H. attended all of the status hearings on the children even when he was under threat of arrest for his continued drug use.

E.H. contends that the emotional and physical dangers to the children were lessened by his realization during his rehabilitation treatment that he was using substances to self-medicate for his depression. He also said that the home he was constructing for the children on his father's land was nearly complete. Despite his new-found sobriety, however, E.H. had a years-long history of drug abuse and verbal abuse, and he had been unaware of or indifferent to its effects on the children including its legal ramifications during this case.

As for the parties' plans for the children, E.H. intended to keep them in foster care while he pursued his rehabilitation program, to finish the house he was building, and then to move them next door to his allegedly abusive father who the children feared and did not want to live near. He did not name any family members or friends as possible alternate placements. The Department planned to keep the children in their current placement until they were adopted as a group, but the Department had not identified an adoptive family. There was some testimony that finding an adoptive home for a group of five children might be more challenging than for a smaller group.

7

The record contained evidence that E.H. exposed the children to his daily drug use, as well as frequent verbal abuse and occasional physical abuse that the children experienced both first-hand and as witnesses. Their environment had affected the children in ways that they were overcoming while in foster care, but they would need continued therapy with one requiring residential treatment in a locked facility. E.H. produced testimony that he had realized the error of his ways and was working to address those problems. He intended to continue with his rehabilitation and to provide a safe home for his children, but was not able to do so immediately. He agreed that all of his hopes and plans were on the brink of working, but were also "on the brink of a deep, dark hole" if he relapsed again. Assessing this record using the applicable standards, we conclude that the record contains legally and factually sufficient evidence to support the jury's finding by clear and convincing evidence that termination of E.H.'s parental rights was in the children's best interest.

## CONCLUSION

We affirm the order terminating E.H.'s parental rights to his five children.

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   January 31, 2014

8