# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00581-CV

**W. D. and B. D., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 263,767-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant B.D. ("Beth") appeals from the trial court's judgment terminating her parental rights to her three minor children, "Tasha," "Nick," and "Walter Jr."[1] Similarly, Beth's husband, appellant W.D. ("Walter Sr."), appeals from the trial court's judgment terminating his parental rights to Walter Jr.[2] On appeal, Walter Sr. and Beth each assert that the evidence is insufficient to support terminating their respective parental rights. We affirm the trial court's judgment terminating their parental rights.

---

[1] For the sake of convenience and privacy of the parties, we refer to the minor children, their parents, and other family members by fictitious names.

[2] Tasha and Nick's father, "Larry," also had his parental rights terminated in this case. Larry did not appeal the trial court's judgment terminating his parental rights.

## BACKGROUND

The appellee Texas Department of Family and Protective Services (the Department) became involved in this case after receiving a report that (1) Beth had been using phencyclidine (PCP) while pregnant with Walter Jr. and (2) then thirteen-year-old Tasha alleged that Walter Sr. had sexually abused her. According to Vickie Browder, the Department's conservatorship worker who was assigned to this case, both Beth and Walter Sr. tested negative for drugs during the Department's initial investigation. Furthermore, Browder testified that Beth did not believe that Walter Sr. had sexually abused Tasha and that Tasha did not allege sexual abuse during her initial forensic interview at a local child advocacy center. Based on the lack of evidence, Browder stated that the Department initially "ruled out" any alleged sexual abuse, which Browder explained meant that "there was not a preponderance of belief" that any sexual abuse had occurred.

Two weeks after receiving its initial report, the Department received a second report indicating that Beth had given birth to Walter Jr. and that both she and Walter Jr. tested positive for PCP. Based on Beth's drug use during pregnancy, the Department sought to remove all three children from Beth and Walter Sr.'s care. The Department sought to be named the children's temporary managing conservator and to remove Beth from the family's home.

Following an adversarial hearing, the trial court signed an order naming the Department as the children's temporary managing conservator. Browder testified that the Department initially placed all three children with Walter Sr.—although the Department remained the children's temporary managing conservator—and required that Beth be allowed only supervised visits with the children and that she not be allowed to stay with the children overnight. The Department

2

prepared family service plans through which Beth and Walter Sr. could work toward regaining conservatorship of their children. *See* Tex. Fam. Code § 263.106. Under the terms of these family service plans, both Beth and Walter Sr. were required to submit to random drug screenings and participate in parenting classes. Beth was also required to attend individual counseling sessions, submit to a psychological exam, submit to drug and alcohol assessments, and complete parenting classes.

Approximately six months after the Department was named the children's temporary managing conservator, Tasha made a second allegation of sexual abuse—this time alleging that she had sexual intercourse with Walter Sr. prior to Beth's removal. Browder testified that she discussed these allegations with Beth and Walter Sr. According to Browder, Beth stated that she did not believe that Walter Sr. had sexually abused Tasha, and Walter Sr. denied the allegations. By this time, the Department had already removed all three children from Walter Sr.'s home because Walter Sr. had allowed Beth to stay with the family overnight, which was prohibited by the court's order. Based on the allegations of sexual abuse, Beth's alleged relapse into drug use after completing an in-patient treatment program, and Beth's and Walter Sr.'s alleged lack of progress in counseling, the Department ultimately sought to terminate Beth's and Walter Sr.'s parental rights.

During a three-day jury trial on the Department's petition to terminate Beth's and Walter Sr.'s parental rights, then fifteen-year-old Tasha testified extensively about Walter Sr.'s alleged sexual abuse and Beth's drug use. According to Tasha, Walter Sr. repeatedly offered to give her marijuana or cigarettes in exchange for sexual intercourse. Tasha also stated that Walter Sr. used his cell phone to take pictures of her while she was showering without her knowledge and that Walter Sr. sent her sexually explicit text messages. Tasha claimed that when she showed Beth the

3

sexual text messages, Beth kicked Walter Sr. out of the home only to let him come back three weeks later. Finally, Tasha stated that she contracted chlamydia as a result of her sexual intercourse with Walter Sr.

Tasha also testified that her mother repeatedly used drugs in their home while the children were present. According to Tasha, Beth would "dip" her cigarettes in "embalming fluid"—a slang term for soaking cigarettes in liquid PCP—and then smoke them in her bedroom. Tasha stated that she could smell the PCP throughout the house and that after smoking, Beth would appear to be talking to herself and "say random things" for approximately five or ten minutes. In her testimony, Beth admitted that she used PCP while pregnant with both Nick and Walter Jr. Beth also admitted that she relapsed into PCP use after completing the in-patient drug treatment program required under her family service plan, but denied ever using PCP in her home. Beth testified that she initially did not believe Tasha's allegations that William Sr. had sexually abused her until law-enforcement investigators explained the full extent of Tasha's allegations. Walter Sr. did not testify.

Tasha's and Walter Sr.'s counselor testified that although the parents initially made progress, they soon reverted to their previous behavior and, as of the time of trial, could not provide a safe home for their children. The counselor also testified that Beth was selectively honest about certain aspects of her past and that Beth would often downplay or deny various events, including her recent relapse. Finally, the Department called a psychologist to testify about the effects of PCP use both for adults and families. According to this psychologist, PCP is among the most dangerous hallucinogens due to its addictive properties and long-term damage to the brain.

Following this testimony, the jury found by clear and convincing evidence that Beth and Walter Sr.'s parental rights should be terminated. *See* Tex. Fam. Code § 161.001 (explaining

4

required findings to terminate parental rights). Consistent with the jury's verdict, the trial court rendered judgment terminating Beth's parental rights to Tasha, Nick, and Walter Jr. and rendered judgment terminating Walter Sr.'s parental rights to Walter Jr. This appeal followed.

## DISCUSSION

Walter Sr. and Beth both assert that the evidence is legally and factually insufficient to support termination of their respective parental rights. To terminate the parent-child relationship, the fact-finder must find clear and convincing evidence that (1) the parent has engaged in conduct constituting statutory grounds for termination and (2) termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Walter Sr. argues that the evidence is insufficient to establish either of these elements, while Beth asserts only that the evidence is insufficient to establish that terminating her parental rights was in her children's best interest. We will briefly discuss the applicable standard of review before addressing Walter Sr.'s and Beth's arguments.

**Standard of review**

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a termination case, we review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's determination and will uphold a finding if a reasonable fact-finder could have formed a firm conviction that its finding was true. *Id.* To give appropriate deference to the jury's conclusions, we must assume that the jury resolved disputed facts in favor of its finding if it could

5

reasonably do so. *Id.* An appellate court should disregard evidence a reasonable fact-finder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder could form a firm belief or conviction that a given finding was true. *C.H.*, 89 S.W.3d at 18–19. We assume that the jury resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the jury could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

**Walter Sr.: Statutory ground for termination**

In his first and second issues on appeal, Walter Sr. asserts that the evidence is legally and factually insufficient to support the jury's finding that he engaged in conduct set out as a statutory ground for terminating his parental rights. *See* Tex. Fam. Code § 161.001(1). Specifically, Walter Sr. asserts that there is nothing in the record to indicate that he endangered Walter Jr.'s physical or emotional well-being because there was no evidence that Walter Sr. used drugs or abused either Beth or Walter Jr. Therefore, according to Walter Sr., the evidence is insufficient to support terminating his parental rights under either subsection (D) or (E), the two statutory grounds that the Department alleged supported terminating his parental rights. *See id.* § 161.001(1)(D)–(E).

6

Both subsections (D) and (E) require proof of child endangerment, i.e., exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Endangerment may be inferred from parental misconduct alone. *Id.* Subsection (D) requires proof that the environment in which the parent placed the child endangered the child's physical or emotional well-being, while subsection (E) requires proof that the cause of the endangerment was the parent's actions or failure to act. *Id.* Neither subsection (D) nor (E) requires that the parent himself endanger the child—it is sufficient that the parent knowingly allow his child to be in an environment or with a person that endangers the child's well being. Tex. Fam. Code § 161.001(1)(D)–(E); *see also In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (concluding father endangered child by allowing mother to smoke marijuana while pregnant with child); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.) (concluding that mother endangered child by allowing child to live in environment where father routinely abused mother in front of child).

Only one statutory ground is necessary to support a judgment in a parental-rights-termination case. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, when multiple statutory grounds for termination are alleged and the trial court issues a broad-form question asking the jury whether the parent-child relationship should be terminated, we must uphold the jury's finding if any of the statutory grounds alleged supports it. *Spurck*, 396 S.W.3d at 221 (citing *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied)).

"Drug abuse during pregnancy constitutes conduct that endangers a child's physical and emotional well-being." *M.R.J.M.*, 280 S.W.3d at 502–03 (internal citations omitted); *see also*

7

*In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) (same). Similarly, if a father knowingly allows a pregnant mother to use drugs during pregnancy, the father's failure to protect his unborn child can constitute conduct that endanger's the child's well being. *See M.R.J.M.*, 280 S.W.3d at 502–03 (concluding that father endangered unborn child by failing to prevent mother from smoking marijuana while pregnant).

Beth admitted that she used PCP while pregnant with Walter Jr., and that Walter Jr. had PCP in his system when he was born. Walter Sr. did not testify at trial, so there is no direct evidence about whether he knew that Beth continued to use PCP while pregnant. However, there was evidence that Beth had a history of abusing PCP, including having previously used PCP while pregnant with Nick. Furthermore, Tasha testified that there was a potent smell throughout the house whenever Beth was smoking PCP and that Beth was visibly disoriented after smoking PCP. Given that Walter Sr. lived in the home with Beth during her pregnancy with Walter Jr., the jury could have reasonably inferred that Walter Sr. knew that Beth was using PCP while pregnant with their son.

Based on this evidence alone, the jury could have reasonably found that Walter Sr. knowingly allowed Walter Jr. to remain in conditions or surroundings that endangered Walter Jr.'s physical and emotional well-being. *See id.* Therefore, considering the evidence in the light most favorable to the jury's verdict, we find that the jury could have reasonably formed a firm belief that subsection (D) supports terminating Walter Sr.'s parental rights. *See A.V.*, 113 S.W.3d at 362. Similarly, considering the evidence in a neutral light, we determine that a fact-finder could reasonably have formed a firm belief or conviction that Walter Sr. knowingly allowed Walter Jr. to remain in an environment that endangered his physical and emotional well being. Therefore, we

conclude that the evidence is factually sufficient to support the jury's finding that one of the statutory grounds for termination exists. *See J.F.C.*, 96 S.W.3d at 266. Having determined that the evidence is sufficient to support the court's finding on subsection (D), we need not consider whether the evidence would support other grounds for termination. *See B.K.D.*, 131 S.W.3d at 16. We overrule Walter Sr.'s first and second appellate issues.

**Walter Sr.: Best interest**

In his third issue on appeal, Walter Sr. asserts that the evidence is legally and factually insufficient to support the jury's finding that terminating his parental rights was in Walter Jr.'s best interest. In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). These factors include (1) the child's wishes, (2) his emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the fact-finder from finding that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001,

no pet.), *disapproved on other grounds*, *J.F.C.*, 96 S.W.3d at 267 n.39; *see also Rios v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00565-CV, 2012 WL 2989237, at *8 (Tex. App.—Austin July 11, 2012, no pet.) (mem. op.).

As outlined above, the jury could have reasonably found that Walter Sr. knowingly allowed Beth to smoke PCP while pregnant with Walter Jr. The jury also heard Tasha's testimony that Walter Sr. (1) repeatedly provided her with marijuana and cigarettes in exchange for sexual favors, (2) attempted to take photographs of her in the shower without her knowledge, and (3) sent her sexually explicit texts.[3] Furthermore, Walter Sr. and Beth's counselor testified that neither parent had made significant progress in improving their parenting skills, that Walter Sr. failed to adhere to the terms of the court's orders by allowing Beth to stay with the children overnight, and that allowing the children to remain in Walter Sr.'s care would not be in the children's best interest. Walter Sr. did not testify in this case, and therefore we have no evidence about his plans for his family's future or what excuses he might have for his previous misconduct.

Considering the evidence in the light most favorable to the jury's finding, the jury could have reasonably found that the *Holley* factors support terminating Walter Sr.'s parental rights. *See Holley*, 544 S.W.2d at 371–72. Therefore, we conclude that the evidence is legally sufficient to support the jury's best-interest finding. *See J.F.C.*, 96 S.W.3d at 266. Similarly, considering the

---

[3] On appeal, Walter Sr. asserts that the jury could not have reasonably credited Tasha's testimony about his alleged sexual abuse and drug use because it was uncorroborated and because Tasha's foster-mother admitted that Tasha lies. However, Walter Sr. did not testify on his own behalf to deny Tasha's accusations and, therefore, although Tasha's allegations are uncorroborated, they are also uncontroverted. We assume that the jury credited Tasha's testimony. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (noting that reviewing court presumes jury resolved any disputed fact in favor of its verdict).

10

evidence in a neutral light, we conclude that the disputed evidence is not so significant as to prevent a reasonable factfinder from forming a firm belief or conviction that the jury's best-interest finding was true. Thus, the evidence is factually sufficient to support the jury's best-interest finding. *See id.* We overrule Walter Sr.'s third appellate issue.

**Beth's parental rights**

In her sole issue on appeal, Beth asserts that the evidence is legally and factually insufficient to support the jury's finding that terminating her parental rights was in Tasha's, Nick's, and Walter Jr.'s best interest. Beth testified at trial that she loves and cares about her children, that she took an active role in Tasha's education, that she attended her supervised visits with her children, and that she participated in her required services. Furthermore, Beth testified that she was functioning better on her new medications that treat her bipolar disorder and that she is sober.

In considering the best interest of the child, "evidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past." *See Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.).

The Department introduced evidence that Beth had a long history of using PCP, that she used PCP while pregnant with both Nick and Walter Jr., and that Beth relapsed to using PCP after completing an in-patient treatment program during the pendency of this case. The Department presented evidence concerning Beth's criminal history, including multiple convictions and incarcerations for driving under the influence, assault, and drug possession that occurred throughout her children's lives. Beth admitted that her criminal history has affected her life and that her

11

children's lives have "not [been] as a mother would want," but she could not provide a justification for her behavior or explain how she would avoid repeating such behavior in the future.

In addition, Tasha testified that when she showed Beth the sexually explicit text messages that Walter Sr. had sent, Beth initially kicked Walter Sr. out of the house, but then allowed him to return three weeks later. Although Beth testified that she had no reason to believe that Tasha was lying about Walter Sr.'s abuse, Beth stated that she did not believe Tasha's allegations were true until approximately one month before trial, when a detective explained the full range of the alleged misconduct. Finally, Beth's counselor testified that although Beth initially made progress in their sessions, she eventually reverted to previous behavior and that by the time of trial, Beth had made no progress in therapy or learning better parenting skills.

Tasha testified that she wanted to live with Beth and, therefore, the children's desires arguably weigh in favor of allowing Beth to retain her parental rights. *See Holley*, 544 S.W.2d at 371–72. However, based on this record, the jury could have reasonably concluded that Beth (1) could not provide for the children's safety now and in the future, (2) would not take advantage of programs designed to help her, (3) lacked appropriate parenting skills, and (4) had no excuse for her prior acts and omissions. *See id.* Therefore, in considering the record in the light most favorable to the jury's verdict, we conclude that the evidence is legally sufficient to support the jury's best-interest finding. *See J.F.C.*, 96 S.W.3d at 266. Similarly, considering the evidence in a neutral light, we conclude that the disputed evidence is not so significant as to prevent a reasonable fact-finder from forming a firm belief or conviction that the jury's best-interest finding was true. Thus, the evidence is factually sufficient to support the trial court's best-interest finding. *See id.* We overrule Beth's sole appellate issue.

**CONCLUSION**

Having overruled Beth's and Walter Sr.'s issues on appeal, we affirm the trial court's

judgment terminating their parental rights.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   February 5, 2015