# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-16-00143-CV

---

**A. R. and C. W., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT**
**NO. C2014-0741D, HONORABLE CHARLES A. STEPHENS, II, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Appellants A.R. (Mother) and C.W. (Father) appeal from the trial court's order terminating their parental rights to their minor child, C.E.W.[1]  In three appellate issues, Mother and Father contend that the evidence is insufficient to support the termination of their parental rights. We will affirm the trial court's order terminating their parental rights.

---

[1] To protect the privacy of the parties, we refer to the child and his parents by their initials. *See* Tex. Fam. Code § 109.002(d).

# BACKGROUND[2]

The Department became involved with this family when Mother and Father left 11-month-old C.E.W. home alone in May 2014. The parents had gone to a pawn shop, where police arrested Mother because she had an outstanding warrant for minor in possession of tobacco. Father also had an outstanding warrant, and police transported him to the municipal court to take care of the warrant. As police were arresting Mother, Mother became agitated, resisted arrest, and told police that someone needed to check on her son. Mother said that her 5-year-old child was at home with a neighbor named Sonia Rodriguez and that he had special needs that required Mother's attention. Police transported Mother to the Comal County jail and sent an officer to her home to check on the child.

Officer Joe Sapedra arrived at the parents' home and began knocking on the neighbors' doors trying to find Sonia Rodriguez.[3] As he was doing so, one of Father's friends arrived and said that he had a key to the parents' home. The friend went into the home, came back out, and told Officer Sapedra that everything was fine because the child was not at home but was instead staying with the child's grandmother. However, when the friend refused to give him the grandmother's phone number, Officer Sapedra entered the parents' home. Officer Sapedra found

---

[2] The facts recited in this opinion are taken from testimony and exhibits presented at trial. Although we have considered the entire record, because this is a memorandum opinion affirming the trial court's termination order, we do not exhaustively detail the evidence. *See* Tex. R. App. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it."); *In re A.B.*, 437 S.W.3d 498, 507 (Tex. 2014) (holding courts of appeals need not detail the evidence when affirming termination findings).

[3] Police were never able to locate Sonia Rodriguez, and the State presented evidence at trial that "there was no Sonia Rodriguez."

C.E.W. alone in a bassinet that was several feet high and had a pillow and blankets in it. C.E.W. was not five years old but was instead an infant. C.E.W. seemed happy but had a soiled diaper and was moving around anxiously. Officer Sapedra picked C.E.W. up because he was concerned that the child would fall out of the bassinet or suffocate on the blankets.

As a result of these events, Mother was charged with endangering C.E.W. and resisting arrest, and Father was also charged with endangering C.E.W. In addition, C.E.W. was removed from the parents' care and the Department was appointed C.E.W.'s temporary managing conservator. The Department placed C.E.W. with a foster family.

The Department later sought termination of the parents' rights. Following a bench trial, the trial court signed an order terminating Mother's and Father's parental rights. This appeal followed.

**DISCUSSION**

To terminate the parent-child relationship, a court must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds for termination and (2) it is in the child's best interest to terminate the parent's rights. Tex. Fam. Code § 161.001. Mother and Father contend that the evidence is legally and factually insufficient to support the termination of their parental rights. "The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing the legal sufficiency of the evidence in a parental-rights-termination case, we consider all the evidence in the light most favorable to the finding and determine whether a reasonable fact-finder could have formed a firm belief or conviction that its finding was true. *See id.* When reviewing the

3

factual sufficiency of the evidence, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002). We assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the fact-finder could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

***Statutory Grounds for Termination***

The trial court found by clear and convincing evidence that Mother and Father engaged in conduct satisfying the statutory grounds for termination listed in Texas Family Code section 161.001(1), subsections (D), (E), and (O).[4] Under subsection (D), a court may terminate a parent's rights if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(1)(D). Under subsection (E), a court may terminate parental rights if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(1)(E). In their

---

[4] After this case was filed in the trial court, the Legislature amended section 161.001 by adding subsection (a). *See* Act of Apr. 7, 2011, 82d Leg., R.S., ch. 1, § 4.02, 2011 Tex. Gen. Laws 1, 9–11 (amended 2015) (current version at Tex. Fam. Code § 161.001(b)(1)). Section 161.001(1) was therefore renumbered as section 161.001(b)(1). This amendment does not affect our analysis, and we use the previous numbering throughout our opinion.

4

first issue, the parents challenge the sufficiency of the evidence supporting the trial court's findings under subsections (D) and (E).

Under subsection (O), a court may terminate parental rights if the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." *Id.* § 161.001(1)(O). In their second issue, the parents challenge the sufficiency of the evidence supporting the trial court's finding under subsection (O). While we will consider each ground in this case, we note that "[o]nly one statutory ground is necessary to support a judgment in a parental-rights-termination case." *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.).

*Subsections (D) and (E)*

Both subsections (D) and (E) require proof of child endangerment, i.e., exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Endangerment does not need to be established as an independent proposition, but may be inferred from parental misconduct alone. *Id.* Subsection (D) requires proof that the environment in which the parent placed the child endangered the child's physical or emotional well-being, while subsection (E) requires proof that the cause of the endangerment was the parent's actions or failure to act. *Id.*

5

We first address subsection (D). At trial, the State presented evidence that Mother and Father left 11-month-old C.E.W. alone in a bassinet, that C.E.W. could have fallen from the bassinet and been injured, and that there were blankets in the bassinet that could have suffocated C.E.W. Although Mother had originally denied leaving C.E.W. alone, at trial she admitted that she left the child alone when she went to the pawn shop.[5] Leaving an infant alone can constitute endangerment under the Family Code. *See In re M.C.*, 917 S.W.2d 268, 269–70 (Tex. 1996) (per curiam); *In re R.D.S.*, No. 14-09-00980-CV, 2010 WL 4882457, at *5 (Tex. App.—Houston [14th Dist.] Nov. 30, 2010, no pet.) (mem. op.); *see also In re G.J.W.*, No. 02-13-00042-CV, 2013 WL 3064450, at *13 (Tex. App.—Fort Worth June 20, 2013, no pet.) (mem. op.) (per curiam) (noting that "[s]ubsection (D) permits termination based on a single act or omission"); *In re L.C.*, 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.) (same). Moreover, although there was conflicting evidence about the risk posed from the bassinet and blankets, the trial court could have credited the evidence that C.E.W. might have fallen or suffocated. *See In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) ("[T]he court of appeals must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses.").

---

[5] Earlier in the trial, before Mother admitted to leaving C.E.W. alone, Mother and Father were asked whether they had left C.E.W. alone. They each invoked their Fifth Amendment privilege against self-incrimination. A fact-finder may draw negative inferences from a party's invocation of the Fifth Amendment in a parental-rights-termination case. *See* Tex. R. Evid. 513(c); *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007) ("[T]he jury in this civil case was free to draw negative inferences from the Flournoys' repeated invocations of the Fifth Amendment."); *In re A.G.*, No. 11-13-00182-CV, 2013 WL 7083186, at *4 (Tex. App.—Eastland Dec. 20, 2013, no pet.) (mem. op.) (noting that fact-finder may draw negative inferences from witness's invocation of Fifth Amendment in parental-rights-termination case); *White v. Texas Dep't of Family & Protective Servs.*, No. 03-08-00411-CV, 2008 WL 5264727, at *5 (Tex. App.—Austin Dec. 19, 2008, no pet.) (mem. op.) (same).

In light of the entire record, we determine that the trial court could have reasonably formed a firm belief that Mother and Father "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(1)(D). We further determine that a reasonable fact-finder could have resolved disputed evidence in favor of its finding and that the disputed evidence is not so significant that the trial court could not reasonably have formed a firm belief or conviction that its finding was true. Therefore, we conclude that the evidence is legally and factually sufficient to support the termination of Mother's and Father's parental rights under subsection (D).

We next address subsection (E). To constitute endangerment under subsection (E), the parent's conduct need not be directed at the child. *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Conduct may endanger a child even if it does not cause the child to suffer actual injury. *M.C.*, 917 S.W.2d at 269 (quoting *Boyd*, 727 S.W.2d at 533).

As discussed above, the Department presented evidence that Mother and Father endangered C.E.W. by leaving him home alone in a dangerous situation. In addition, the Department presented evidence that C.E.W. was born with a bilateral cleft palate and cleft lip as well as amniotic bands that affected his fingers. The evidence showed that while surgery is typically performed to repair a cleft palate at around 10 weeks or 10 pounds, the parents had still not scheduled the surgery by the time C.E.W. was 11 months old. The Department presented testimony that an unrepaired cleft palate and lip exposed C.E.W. to a greater risk of ear infections, hearing loss, permanent speech disability, and a more complicated surgery later on, and that it was very difficult for C.E.W. to feed, as a result of which C.E.W. was underweight when the Department took him. A pediatrician

testified that C.E.W. was the victim of medical neglect because C.E.W. "had not received the appropriate care for his cleft lip and palate." The trial court also heard evidence that C.E.W. had in fact already suffered hearing loss. Although the trial court heard conflicting evidence about the risk posed to C.E.W. by the parents' failure to obtain the appropriate medical care, the trial court could have credited the testimony that the parents' inaction exposed C.E.W. to the significant risks listed above.[6]

Morever, the Department presented evidence that Mother and Father used illegal drugs. When Officer Sapedra entered the parents' home to search for C.E.W., he thought that he saw marihuana residue, although he did not collect or report it. In addition, Leah Amescua, a Department investigator, entered the home and detected "an odor of possible marijuana smell." She also testified that Father admitted to her that he had smoked marihuana the previous night and that drug paraphernalia would be found in his vehicle. Mother testified that she had a history of marihuana use and that she had been arrested for possessing drug paraphernalia. Furthermore, Father invoked his Fifth Amendment privilege against self-incrimination when asked the following questions at trial:[7]

- "[W]ere you using marijuana in 2014?"

- "Was [Mother] smoking marijuana in May 2013?"

- "Was marijuana kept in your home?"

- "Did you smoke marijuana in your home?"

_____

[6] At trial, Mother admitted that she had "made poor decisions" about C.E.W.'s medical care and testified, "Now I am not that person. I have a lot more than [sic] I can provide for him."

[7] A fact-finder may draw negative inferences from a party's invocation of the Fifth Amendment in a parental-rights-termination case. *See supra* n.5.

8

- "Were you dealing marijuana in 2014?"

- "Have you ever dealt marijuana?"

- "Did you sell marijuana to [Mother's younger sister] before?"

- "Would you have tested positive for marijuana if you had been tested May 30th, 2014?"

A parent's illegal drug use may constitute endangerment under subsection (E). *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."); *T.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00784-CV, 2015 WL 3393943, at *2 (Tex. App.—Austin May 21, 2015, no pet.) (mem. op.) ("It is well-established that a parent's illegal drug use may constitute endangerment."); *Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under [subsection (E)]."); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child.").

In light of the entire record, we determine that the trial court could have reasonably formed a firm belief that Mother and Father "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(1)(E). We further determine that a reasonable fact-finder could

have resolved disputed evidence in favor of its finding and that the disputed evidence is not so significant that the trial court could not reasonably have formed a firm belief or conviction that its finding was true. Therefore, we conclude that the evidence is legally and factually sufficient to support the termination of Mother's and Father's parental rights under subsection (E).

Because we have concluded that the evidence is sufficient to support the termination of Mother's and Father's parental rights under subsections (D) and (E), we overrule the parents' first issue.

*Subsection (O)*

Under subsection (O), the Department had the burden to establish that Mother and Father (1) were ordered to comply with a family service plan as a result of their child's removal for abuse or neglect and (2) failed to comply with the requirements of the family service plan. *See id.* § 161.001(1)(O); *T.J. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00351-CV, 2014 WL 6845198, at *3 (Tex. App.—Austin Nov. 25, 2014, no pet.) (mem. op.). Here, the only issue in dispute under subsection (O) is whether Mother and Father failed to comply with the requirements of the family service plan.

The Department presented evidence that Mother and Father failed to comply with the requirements of the family service plan in several ways. First, Mother and Father failed to attend all of C.E.W.'s medical appointments. Of ten total medical appointments, including three surgeries, Mother attended four appointments and Father attended two. Second, Mother and Father failed to contact the Department weekly to update the Department on the parents' services. Third, Mother and Father failed to submit all required monthly budgets to the Department. In addition, the budgets

10

they did submit overstated the parents' income, and for several months the parents would not meet with the Department to discuss the budgets. Finally, Mother and Father failed to maintain a safe and stable home. They were evicted during the case and failed to notify their caseworker, and they later received another eviction notice regarding their new home.

The trial court also heard evidence of ways in which the parents did comply with their family service plan, including attending some of C.E.W.'s medical appointments and visitations and completing some of their required counseling. Nevertheless, in light of the record as a whole, we determine that the trial court could have reasonably formed a firm belief that Mother and Father "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child." Tex. Fam. Code § 161.001(1)(O). We further determine that a reasonable fact-finder could have resolved disputed evidence in favor of its finding and that the disputed evidence is not so significant that the trial court could not reasonably have formed a firm belief or conviction that its finding was true. Therefore, we conclude that the evidence is legally and factually sufficient to support the termination of Mother's and Father's parental rights under subsection (O). Accordingly, we overrule the parents' second issue.

### Best Interest of the Child

In their third issue, the parents challenge the sufficiency of the evidence supporting the trial court's best-interest finding. In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These factors include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the

11

future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the fact-finder from finding that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the presence of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved of on other grounds by J.F.C.*, 96 S.W.3d at 267 n.39.

We conclude that the *Holley* factors weigh in favor of a determination that it is in C.E.W.'s best interest for Mother's and Father's rights to be terminated. As discussed above, the trial court heard evidence that Mother and Father used illegal drugs, left C.E.W. at home unattended in a dangerous situation, failed to obtain appropriate medical care for C.E.W., and failed to demonstrate financial responsibility or maintain a stable home. In addition, the Department presented evidence that Mother and Father failed to interact appropriately with C.E.W. during some of their visitations and that they failed to empathize with C.E.W.'s pain or comfort him after surgery. The evidence showed that C.E.W. will require ongoing medical care until he is at least 18 years old, and the trial court could have concluded from the parents' past behavior that they are not responsible enough to provide for C.E.W.'s complex needs.

12

In contrast, the Department presented evidence that C.E.W.'s foster family promptly arranged for him to receive medical treatment when they took him in. The Department also presented evidence that C.E.W. has bonded emotionally with his foster family. In addition, the Department presented evidence that when C.E.W. was first placed with his foster family, he was behind developmentally. Although almost a year old, C.E.W. could not sit up without assistance, could not grasp toys, was withdrawn, was not interactive, was not interested in being held, and was unable to communicate. However, after having been placed with his foster family, C.E.W. quickly improved and learned to sit up, run, use sign language, and talk. C.E.W.'s "personality just blossomed," and at the time of trial he was "right on target" developmentally.

We conclude, in light of the evidence summarized above,[8] that a reasonable fact-finder could have formed a firm belief or conviction that this finding was true, that a reasonable fact-finder could have resolved disputed evidence in favor of its finding, and that disputed evidence is not so significant that the trial court could not reasonably have formed a firm belief or conviction that its finding was true. Therefore, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that the termination of Mother's and Father's parental rights is in C.E.W.'s best interest. Accordingly, we overrule the parents' third issue.

## CONCLUSION

We have no doubt that Mother and Father love C.E.W., and we acknowledge that the record contains evidence that they made significant strides during the pendency of this case.

___

[8] We have not attempted to reproduce all of the evidence from the record supporting the trial court's best-interest finding. *See supra* n.2.

13

Nevertheless, given our standard of review, we must conclude that sufficient evidence supports the trial court's findings. Accordingly, we affirm the trial court's order terminating Mother's and Father's parental rights.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   October 4, 2016