# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-18-00814-CV

**J. K., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT**
**NO. 296,397-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

J.K. appeals from a decree terminating her parental rights to her children, B.B. and W.B.[1]  She asserts that legally insufficient evidence supports the district court's findings that she placed the children in a dangerous environment and that termination was in their best interest.  *See* Tex. Fam. Code § 161.001(b)(1)(D), (2).  We will affirm the district court's decree of termination.

## STANDARD OF REVIEW

A trial court may terminate parental rights if it finds that a parent's acts or omissions satisfy at least one statutory ground for termination and that termination is in the best interest of the child.  *See id.* § 161.001(b).  The petitioner bears the burden to prove both elements by clear and convincing evidence.  *Id.*  "Clear and convincing evidence" is a heightened burden of proof that

---

[1]  We refer to the children and appellant by their initials in an effort to protect their privacy. *See* Tex. R. App. P. 9.8(b)(2).

requires "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

We apply a standard of review on appeal that reflects this burden of proof. When conducting a legal sufficiency review, we examine "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Reviewing the evidence in the light most favorable to the finding means that we assume the factfinder resolved all disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We must consider undisputed facts that do not support the finding, but we otherwise "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* "Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018).

**STATUTORY GROUND**

In her first issue, J.K. challenges the legal sufficiency of the district court's finding of a statutory ground for termination. The district court found that her actions satisfied Section 161.001(b)(1)(D), which permits termination if a parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(D). In this context, "endanger" means "to expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)).

2

Endangerment requires "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but it is not necessary that the child actually suffer injury. *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Subsection D focuses on the child's environment, which "encompasses the suitability of the child's living conditions and the conduct of parents or others in the home." *In re R.S.-T.*, 522 S.W.3d 92, 108–09 (Tex. App.—San Antonio 2017, no pet.). "Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D." *In re J.E.M.M.*, 532 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The Texas Department of Family and Protective Services (the Department) sought termination based on J.K.'s methamphetamine use and the children's exposure to domestic violence. An affidavit executed by Department caseworker Sean Dahlberg explained that the Department had been involved with J.K. and the children's father (Father), since December of 2017.[2] In particular, the Department asked J.K. to attend therapy and take random drug tests. In the months prior to the children's removal in February of 2018, J.K. took only one drug test. The test was negative, but J.K. refused to take any further tests. Elaine Mata, another Department caseworker, testified that J.K. tested positive for methamphetamine twice after the Department removed the children. J.K. denied using drugs at any point, but the district court could reasonably disregard her testimony and infer, based on her refusals and subsequent positive drug tests, that she used methamphetamine while the

---

[2] The district court also terminated the parental rights of Father. He did not appeal.

3

children were still in her home.[3] *See In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) ("A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs."); *In re C.R.*, 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.) (same).

Dahlberg also described the incident that led to the children's removal. In February of 2018, someone dialed 911 from J.K.'s house and hung up without speaking. J.K. called back soon afterwards "stuttering" that "he was gone" and that police were not needed. Police officers responded to the call anyway, but J.K. refused to let them verify that the children were safe until her parents arrived. During her testimony, J.K. did not dispute that domestic violence had occurred in the home and agreed that W.B. was struck during one such incident. However, she stressed that she is no longer involved with Father. J.K. points to this testimony as proof that the children would not be in danger if they were returned to her. We must reject this argument because when evaluating endangerment under Subsection D, courts "consider the children's environment before the Department obtained custody." *See In re J.E.M.M.*, 532 S.W.3d at 881.

Viewing all the evidence in the light most favorable to the finding, the district court could have reasonably formed a firm belief or conclusion that J.K. knowingly placed or knowingly allowed the children to remain in a dangerous environment. *See In re D.M.*, 452 S.W.3d 462, 470 (Tex. App.—San Antonio 2014, no pet.) (stating that "parental illegal drug use" supports conclusion of child endangerment); *In re G.M.G.*, 444 S.W.3d 46, 59 (Tex. App.—Houston [14th Dist.] 2014,

---

[3] We consider J.K.'s methamphetamine use after the Department removed the children only to the extent it strengthens the inference that she used methamphetamine before the removal. *See In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (stating relevant time frame for evaluating endangerment under Subsection D is before Department gained custody).

no pet.) ("Abusive or violent conduct can produce a home environment that endangers a child's well-being."). We conclude that legally sufficient evidence supports the district court's endangerment finding by clear and convincing evidence, and we overrule J.K.'s first issue.

**BEST INTEREST**

In her second issue, J.K. challenges the legal sufficiency of the district court's finding that termination of her parental rights was in the best interest of the children. We review a best-interest finding by considering factors such as:

- the children's wishes;

- the children's present and future emotional and physical needs;

- any emotional and physical danger to the children now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist the individuals seeking custody to promote the best interest of the children;

- the plans for the children by the individuals or agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and

- any excuse for the parent's acts or omissions.

*In re E.N.C.*, 384 S.W.3d at 807 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). The Department is not required to prove all nine factors as a "condition precedent" to termination, and the absence of evidence for some factors does not preclude a finding that termination is in a

child's best interest. *Spurck v. Tex. Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 222 (Tex. App.—Austin 2013, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)).

The district court heard additional testimony from Mata regarding J.K.'s conduct after the Department removed the children. J.K. was ordered to, among other things, continue taking drug tests, attend therapy, and pay child support. J.K. missed all but four tests, two of which were positive for methamphetamine. The court took away her visitation rights until she had three consecutive negative drug tests, but there is no evidence that she attempted to meet this requirement. In addition, J.K. was discharged from therapy without completing it, did not pay any child support, and failed to attend two status conferences. J.K. attributed these difficulties to her irregular access to transportation, but she also testified that she used her grandmother's car for approximately three months after the removal before losing access to it. Even if J.K. did all that she was capable of doing under the circumstances, at the time of the hearing she was incarcerated in Bell County jail awaiting trial for assault causing bodily injury to a family member and possession of marijuana.[4] J.K. testified she had plans for obtaining transportation and a job after her release, but she also admitted she did not know the status of her case.

The district court also heard evidence regarding the well-being of the children. Mata testified that the children have lived with J.K.'s first cousins for approximately seven months. The children originally had severe behavioral problems—"tantrums, hitting each other, biting each other, hitting their heads against the wall, the tables, hitting the caregiver, wouldn't eat, wouldn't

---

[4] J.K. declined to answer questions regarding the circumstances surrounding those arrests on the advice of her counsel.

sleep"—but now exhibit none of those behaviors. Vicki Israel, a court-appointed special advocate, attributed this change to the safety and support provided by the children's new family. Israel further testified that termination of J.K.'s parental rights would be in the children's best interest because J.K. could not provide a similarly safe and supportive environment. Mata added that the family intends to adopt the children and has plans to enroll them in therapy to help them adjust to the change.

Viewing the evidence in the light most favorable to the finding, the district court could reasonably form a firm belief or conviction that J.K. could not provide a safe and stable environment for the children. We conclude that legally sufficient evidence supports the district court's finding by clear and convincing evidence that termination of J.K.'s parental rights was in the best interest of the children. We overrule J.K.'s second issue.

## CONCLUSION

We affirm the district court's decree of termination.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed: April 17, 2019

7