# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00243-CV

---

**S. S. F., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 424TH DISTRICT COURT OF BURNET COUNTY**
**NO. 53457, THE HONORABLE CHERYLL MABRAY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

S.S.F. (Mother) appeals the trial court's "Order Terminating the Parent-Child Relationship," which was rendered after a bench trial and terminated Mother's parental rights to four of her children. The four children were eleven years, five years, two years, and about four months old at the time of trial. In three appellate issues, Mother challenges the sufficiency of the evidence to support (a) the two statutory predicate grounds that supported the termination of her parental rights—Paragraphs (N) and (O)—and (b) the statutory best-interest ground. *See* Tex. Fam. Code § 161.001(b)(1)(N), (O), (2). We affirm.

### APPLICABLE LAW AND STANDARD OF REVIEW

To terminate parental rights, the Department of Family and Protective Services must prove both (1) one of the statutory predicate grounds and (2) that termination is in the best interest of the child. *See id.* § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

The Department must prove both elements by clear and convincing evidence. *See* Tex. Fam. Code § 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

Legal-sufficiency review of the evidence to support termination requires reviewing all the evidence in the light most favorable to the finding under attack and considering undisputed contrary evidence to decide whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*

When reviewing the evidence, we must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). The factfinder has a right to disbelieve any witness's testimony. *See S.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00039-CV, 2020 WL 3892796, at *15 (Tex. App.—Austin July 10, 2020, no pet.) (mem. op.). And it is the factfinder's role to draw any reasonable inferences from the evidence and to choose between conflicting reasonable inferences. *See In re J.W.*, 645 S.W.3d 726, 745 (Tex. 2022); *B.D. v. Texas Dep't of Fam. & Protective Servs.*,

2

No. 03-20-00118-CV, 2020 WL 5100641, at *17 (Tex. App.—Austin Aug. 28, 2020, pet. denied) (mem. op.).

## EVIDENCE SUFFICIENCY—PARAGRAPH (O)

In her second issue, Mother raises the sufficiency of the evidence to support terminating her parental rights under statutory predicate Paragraph (O). To prove this predicate, the Department must prove by clear and convincing evidence that the parent

> [(1)] failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child [(2)] who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months [(3)] as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Fam. Code § 161.001(b)(1)(O); *see M.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00531-CV, 2021 WL 1704258, at *9 (Tex. App.—Austin Apr. 30, 2021, no pet.) (mem. op.). Mother concedes Department conservatorship for the required period: "Mother does not dispute the fact that the children were in the conservatorship of the Department for at least nine months." Her appellate challenge is instead limited to arguing that (1) the Department did not prove that the children were removed for abuse or neglect and (2) she did prove her affirmative defense under Family Code section 161.001(d).

### *Abuse or Neglect*

When proving removal for "abuse and neglect," the Department need not prove actual harm to all children who are the subject of the suit. Instead, because the term "abuse or neglect" is "'used broadly' in (O)," the term "necessarily includes the risks or threats of the

3

environment in which the child is placed." *In re A.A.*, 670 S.W.3d 520, 528 (Tex. 2023) (quotation omitted) (quoting *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013)).

The evidence from Mother's trial was legally and factually sufficient to support that the children were removed from Mother for abuse or neglect. A Department witness testified that the Department's initial involvement with Mother and the children came on the heels of outcries that one of the children made at school. The child reported "that she had witnessed her *mom stomping on the head of her baby brother* and that now he was no longer in the home and that mom was looking for a place for the kids to go." (Emphasis added.) Other testimony described the condition of Mother's trailer home, where she lived with the four children, around the time of removal: it had a strong smell of urine and feces in the children's rooms; there was a roach infestation; there were holes or "soft spots" in the floor, including some with jagged edges, through which you could see the ground or a child could fall or get a limb stuck; there was "loose electrical"; most electric outlets lacked outlet covers; there was an extension cord running through the middle of a room to an overhead light; one of the two bathrooms did not work because it was under construction; outside, there was broken glass and pieces of wood, some with large, rusty nails sticking out; the home's underpinning had several sharp edges sticking up; the front door was detached from its frame; the back steps were unstable; and the home's condition "needed a lot of work," in one caseworker's words. All this testimony supports the "abuse or neglect" finding under the applicable standards. *See id.*; *M.D.*, 2021 WL 1704258, at *9 (consideration of whether abuse or neglect is shown involves determining "whether a person of reasonable prudence could have found that [the child] faced an immediate danger to [her] health or safety" (quotation omitted) (quoting *C.L.J. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-13-00646-CV, 2014 WL 1203239, at *6 (Tex. App.—Austin Mar. 20, 2014, pet. denied) (mem. op.))).

4

Mother's arguments to the contrary amount to disputing the meaning of some of the evidence that we have recounted and asserting simply that no evidence was presented to support the necessary finding. But the evidence we rely on supports the necessary finding under the legal- and factual-sufficiency standards, so we overrule this portion of Mother's second issue.

*Section 161.001(d) Affirmative Defense*

The Section 161.001(d) affirmative defense prevents terminating rights under Paragraph (O) for failure to comply with a court order when the parent proves by a preponderance of the evidence that (1) the parent was unable to comply with specific provisions of the court order at issue and (2) the parent made a good-faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent. *See* Tex. Fam. Code § 161.001(d)(1)–(2); *C.C.F. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00152-CV, 2020 WL 4929782, at *3 (Tex. App.—Austin Aug. 19, 2020, pet. denied) (mem. op.). The parent bears the burden of proof on this affirmative defense and so must come forward with evidence to support its elements. *See C.C.F.*, 2020 WL 4929782, at *4–5.

For a legal-sufficiency attack on an issue on which the appealing party bore the burden of proof, the attack succeeds only if the party shows that "the record conclusively establishes all vital facts in support of the issue." *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). For a similarly postured factual-sufficiency attack, the appealing party must show that the finding on the relevant issue "is against the great weight and preponderance of the evidence." *See Fox v. O'Leary*, No. 03-11-00270-CV, 2012 WL 2979053, at *3 (Tex. App.—Austin July 10, 2012, pet. denied) (mem. op.). In a factual-sufficiency review, "[w]e may not substitute our own judgment for that of the factfinder, even if the evidence would support a

different result." *Saltworks Ventures, Inc. v. Residences at the Spoke, LLC*, No. 03-16-00711-CV, 2018 WL 2248274, at \*6 (Tex. App.—Austin May 17, 2018, no pet.) (mem. op.).

Under those standards, the record supports the trial court's rejection of the affirmative defense because Mother failed to show that she was unable to comply with specific provisions of the court order at issue. *See* Tex. Fam. Code § 161.001(d)(1). Mother's appellate brief identifies her efforts to comply with the relevant court order, mentioning her attendance for certain services, participating in mediation to arrive at a service plan that would meet her unique needs, and making efforts to improve her home. But Mother does not identify any specific provisions of the court order that she was *unable*—that she *could not*—comply with. *See id.*; *C.C.F.*, 2020 WL 4929782, at \*4. Mother put on no evidence at trial, and the most her brief identifies in support is that she had a low IQ, lacked reliable transportation and reliable phone access, and did not know what further services were required of her. This evidence does not conclusively prove that Mother was unable to comply with any specific provision of the court's order; all the evidence rather shows, when viewed in the light most favorable to the trial court's termination order, that Mother could have met all the order's requirements because she had met and was meeting at least some of its requirements. The court's decision also was not against the great weight and preponderance of the evidence. For example, evidence showed that Mother communicated with Department personnel from time to time, either when her phone was working or through intermediaries like her mother. And her low IQ did not prevent her from taking some steps to comply with parts of the service plan that was negotiated to meet her specific needs. It is reasonable to infer that she knew what her service plan required of her because her and her attorney's signatures and initials are shown on the negotiated service plan filed with the court. In all, the evidence was legally and factually sufficient for the trial court to refuse, as it did, to

find that Mother had met her burden under Section 161.001(d)(1). We thus overrule the rest of Mother's second issue.

Because we overrule Mother's challenge under the Paragraph (O) predicate, and because only one such statutory predicate is needed to support terminating parental rights, we need not reach Mother's first appellate issue, which challenges the Paragraph (N) finding made against her. *See* Tex. R. App. P. 47.1; *In re N.G.*, 577 S.W.3d 230, 232–33 (Tex. 2019) (per curiam).

## EVIDENCE SUFFICIENCY—BEST INTEREST

In her third issue, Mother maintains that the evidence was legally and factually insufficient to support the statutory best-interest finding made against her. *See* Tex. Fam. Code § 161.001(b)(2). When reviewing best-interest findings, factors that courts consider include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the parent's conduct that may indicate that the existing parent–child relationship is improper, and (9) any excuses for the parent's conduct. *J.W.*, 645 S.W.3d at 746. This list of factors is not exhaustive, not all of them need be proven to determine a child's best interest, and proof of only one factor may be adequate in a particular factual context to support termination. *See M.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00541-CV, 2023 WL 2025710, at *5 (Tex. App.—Austin Feb. 16, 2023, no pet.) (mem. op.); *S.C.*, 2020 WL 3892796, at *16. Evidence probative under the statutory predicate grounds may also be probative of best interest. *A.C.*, 560 S.W.3d at 631–32.

Under the first factor—the children's wishes—evidence showed that the children were improving in their placements with relatives or in one child's case, in a therapeutic-home placement that addresses the child's special needs, with each child bonding with their caregivers. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent."); *accord J.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00583-CV, 2023 WL 2169492, at *5 (Tex. App.—Austin Feb. 23, 2023, no pet.) (mem. op.). And though there is no direct evidence of the children expressing their wishes, circumstantial evidence suggested that seeing Mother frightens the children. *See J.G. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00790-CV, 2023 WL 3634364, at *8 (Tex. App.—Austin May 25, 2023, no pet.) (mem. op.) ("The lack of an emotional bond between the child and the parent is relevant in determining the child's desires."). One of the daughters has begun visitations with Mother by crying loudly and clinging to her caregiver as soon as Mother arrives, not calming down for at least a couple of hours, and the child has lunged at Mother, scratched Mother's face, and pulled her and others' hair (a Court Appointed Special Advocates worker lost some hair in one such incident). The other three children would tend to avoid Mother during visits. And the oldest child has a problem with defecating on himself, which worsens around the time of visits with Mother. Mother raises the fact that the Department forbade her from visits for about four months during the suit, but evidence showed that the Department did so to prevent Mother's headlice problem from reinfesting the children after their headlice problems had cleared up after treatment. Visits later resumed. Mother also raises a caseworker's admission that the children's reactions should not be held against Mother because she had been barred from visits for months. But the trial court as factfinder had a

right to disregard this testimony in favor of the reasonable inferences that the children's reactions give rise to. In all, the evidence under this first factor weighs in favor of termination.

Under the second, third, fourth, seventh, and eighth best-interest factors, several topics from the evidence are relevant. Potential exposure to domestic violence in a home weighs against keeping children in the home, *see In re R.B.*, No. 05-21-00043-CV, 2021 WL 2943927, at *14 (Tex. App.—Dallas July 9, 2021, no pet.) (mem. op.), and an officer testified that he recently arrested the father of some of the children because the father had allegedly assaulted Mother at Mother's home. This episode occurred even though, the evidence suggested, Mother was supposed to stay away from the father, and she had hidden her continuing relationship with him from the Department. There had been other allegations of domestic violence between them in the past. The officer applied for an emergency protective order on Mother's behalf.

Next, we consider relevant the evidence recounted above about the state of Mother's home as against the children's placements, which facilitated improvements in the children's behavior, and the children's headlice before first coming into Department care. *See Spurck v. Texas Dep't of Fam. & Protective Servs.*, 396 S.W.3d 205, 223 (Tex. App.—Austin 2013, no pet.) (factfinder may weigh "the relative parenting abilities of the parties seeking custody"). In addition, testimony suggested that the children ate ravenously at their placements because they had not been getting enough to eat while with Mother. All this led a caseworker to testify that Mother's home still is not safe or predictable for the children. On the other hand, there was evidence that Mother had improved the conditions of her home, including replacing the front door and carpet, exterminating the roaches, providing beds for the children, and cleaning much of the debris from the yard, and that she had taken many classes that the Department required of her, including a class on personal hygiene. But other testimony showed that she had not completed

9

everything, had not even begun the Department-required therapy appointments with a counselor, and did not show improvement in parenting during visits even after having attended some parenting classes. *See D.W. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00455-CV, 2022 WL 91972, at *8 (Tex. App.—Austin Jan. 6, 2022, pet. denied) (mem. op.) (holding that evidence was sufficient to support "best interest" finding in part because of parent's lack of improvement in "parenting abilities and stability"). And problems in the home persisted—still some outlets uncovered, the bathroom under construction, the floor's soft spots, the unstable back steps, and some wood and nails still in the yard—and when the officer visited shortly before trial, the home lacked electricity. Given the evidence, we consider the second, third, fourth, seventh, and eighth best-interest factors as supporting termination.

Under the sixth factor, Mother adduced no evidence of her own to show her plans for the children. *See In re K.C.*, No. 07-18-00282-CV, 2018 WL 6729944, at *5 (Tex. App.—Amarillo Dec. 21, 2018, pet. denied) (mem. op.) (because parent "chose not to provide the court any information through testimony," court of appeals was "not informed of matters critical to the best-interest determination such as [parent]'s rehabilitation or his plans for family"). But evidence did show the plans for the children in their placements. There were people prepared to adopt each child, *see S.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00476-CV, 2023 WL 402206, at *6 (Tex. App.—Austin Jan. 26, 2023, no pet.) (mem. op.) (considering plans for adoption when reviewing this best-interest factor); each placement communicates with the others regularly about the children and their progress; and for the child with special needs, the therapeutic home had the transportation and time available to transport the child to his many medical or therapeutic appointments. Mother, by contrast, lacks reliable transportation, but she does enjoy a lot of support from family and friends. This factor weighs at least slightly in favor of termination.

10

We consider the fifth best-interest factor to be neutral for lack of any evidence that is best analyzed only under that factor. Under the ninth and final factor, there was competing evidence whose conflict we need not resolve. Evidence showed that Mother has mental deficiencies, and each side argues about how that evidence should be weighed, with Mother arguing that her low IQ cannot be held against her and the Department arguing, in line with one of its witnesses' testimony, that Mother's mental deficiencies prevent her from properly caring for the children. We need not resolve this conflict because the evidence under the rest of the factors can suffice to support termination. *See M.L.*, 2023 WL 2025710, at \*5; *S.C.*, 2020 WL 3892796, at \*16. Under the applicable legal- and factual-sufficiency standards, the evidence allowed the trial court to form a firm belief or conclusion that terminating Mother's parental rights was in the children's best interest, and no evidence in Mother's favor prevented such a firm belief or conclusion. We thus overrule Mother's third issue.

## CONCLUSION

We affirm the trial court's termination order.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed: September 27, 2023

11